UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF KENTUCKY
PADUCAH DIVISION
CASE NO.: 5:07-CV-7

MSD ENERGY, INC. and
STEPHEN SMITH, INC.                                                                 PLAINTIFFS

v.

RICHARD J. GOGNAT, TIMOTHY A. GOGNAT;
ROY KNAPPE, JR.; and GLOBAL GEODATA, LLC                          DEFENDANTS

**MEMORANDUM OPINION**

Timothy Gognat ("Timothy") filed a Partial Motion to Dismiss claims against him. (Docket # 6). Plaintiffs jointly responded (Docket # 16), and Timothy replied. (Docket # 19). Richard Gognat ("Richard"), Roy Knappe, Jr. ("Knappe"), and Global Geodata, LLC, ("Geodata") also filed a joint Motion to Dismiss. (Docket # 5). Plaintiffs again jointly responded (Docket # 15), and Richard, Knappe, and Geodata filed a joint Reply. (Docket # 18). The Court now GRANTS IN PART AND DENIES IN PART both Timothy's Motion to Dismiss and Richard, Knappe, and Geodata's joint Motion to Dismiss.

**BACKGROUND**

This case arises from a dispute over oil rights between Plaintiffs and Defendants. MSD Energy, Inc., ("MSD") and Third Party Defendant, Chet J. Ellsworth ("Ellsworth"), the president of MSD, have worked to acquire various working interests in oil and gas leases within Kentucky for eight years. In the course of business, MSD and Ellsworth assigned to Knappe, Timothy, and Richard each a .75% royalty interest in oil and gas leases owned by MSD in Caldwell County, Kentucky. The assignment contract allowed MSD to rescind the assignment if a claim was

asserted by the assignees against the assignors. Subsequently, MSD and Ellsworth continued developing their business and interests in oil and gas leases in Kentucky.

MSD is a Wyoming corporation doing business in Colorado, Kentucky, and elsewhere. MSD is owned by Ellsworth, a Florida resident, and Ms. Ellsworth, also a Florida resident, serves as its secretary. Mr. Smith is a Colorado resident conducting business in Colorado, Kentucky, and elsewhere. Mr. Smith is the sole owner and manager of Steven Smith, Inc. (hereinafter "SSI"), a Wyoming corporation. Mr. Smith remains a party to the Colorado lawsuit opposite Timothy. Timothy, Richard, and Knappe are all residents of Colorado, and Geodata is a Colorado limited liability company.

On December 19, 2005, Timothy filed an action against MSD, Ellsworth, Joanne Ellsworth, and Stephen Smith ("Mr. Smith") (collectively the "Colorado defendants") in Colorado courts alleging that Ellsworth had breached a promised joint venture agreement with Timothy regarding the acquisition of oil and gas leases in western Kentucky, misappropriated Timothy's trade secrets, and had been unjustly enriched. Timothy alleges that, through the arrangement of Mr. Smith, he met with Mr. Smith, Ellsworth (in his individual capacity and on behalf of MSD), and Ms. Ellsworth (secretary of MSD). Timothy claimed that he assisted the Colorado defendants in developing information regarding the location of oil and gas deposits. Timothy claims that he provided this information with the intention of forming a joint venture with the Colorado defendants to acquire mineral rights leases in the identified areas, but that the Colorado defendants represented that the information provided by Timothy was not useful to them. According to Timothy, the Colorado defendants then acquired rights in the areas identified by Timothy without including him as a joint venturer. He filed the Colorado lawsuit to recover

his share of profits from the acquisition of mineral rights identified through his research and alleged trade secrets. Since he sought to recover interests in the oil and gas leases acquired by the Colorado defendants, Timothy filed notices of *lis pendens* referring to the Colorado lawsuit on properties in Kentucky owned by the Colorado defendants.

The Colorado court dismissed the Colorado lawsuit as to all defendants except Mr. Smith on August 1, 2006. The Court determined that it lacked personal jurisdiction over all the non-resident Colorado defendants: Ellsworth, Ms. Ellsworth, and MSD. On August 9, 2006, the Colorado court determined that the notices of *lis pendens* filed in connection with the Colorado lawsuit were invalid. The notice of *lis pendens* were not removed by Timothy for three months, after Mr. Smith filed a Motion for Contempt seeking their release.

Although Richard and Geodata were not filing plaintiffs in the Colorado lawsuit, Plaintiffs allege that they also caused the Colorado lawsuit to be filed. Timothy admits working with a partner to develop oil and gas leases; Plaintiffs submit that this partner is Richard. Richard and Timothy are the sole and founding members of Geodata. Geodata's business includes the acquisition of oil and gas leases in the western Kentucky area, in competition with MSD. Plaintiffs have identified emails between Richard and Timothy speaking of "our" lawsuit and referring to the Colorado lawsuit. Timothy confirmed that Richard had some role in the filing of the Colorado lawsuit, admitting that he discussed the lawsuit with Richard.

Plaintiffs filed the instant action alleging that Timothy, Richard, and Geodata improperly caused the Colorado lawsuit to be filed against Ellsworth, Ms. Ellsworth, and MSD. Plaintiffs also seek relief from Timothy, Richard, and Geodata for allegedly improperly causing the notices of *lis pendens* to be filed against Ellsworth, Ms. Ellsworth, and MSD. The case was originally

filed in Lyon Circuit Court in Kentucky, but has been removed to this Court. According to Plaintiffs, the dismissed Colorado lawsuit and related notices of *lis pendens* were filed in order to sully Plaintiffs' contractual and business relationships, preventing MSD from entering certain contractual arrangements in Kentucky and allowing Geodata to gain a competitive edge. As a result, Plaintiffs allege, Geodata secured several deals in the Kentucky area to the benefit of Richard and Timothy, and to the detriment of Plaintiffs. Plaintiffs claim that Defendants caused the lawsuit to be filed with the intent to interfere with Plaintiffs' potential business deals, not to pursue Timothy's legitimate rights.

In Count I of the Complaint, Plaintiffs allege that Timothy's filing of the Colorado Complaint and Richard's and Geodata's encouragement of the filing of the Colorado Complaint and notices of *lis pendens* constitute and abuse of process. In Count II, the Plaintiffs assert that Timothy, Richard, and Geodata are liable for slander on Plaintiff's titles to mineral interests in western Kentucky because they caused the Colorado Complaint and notices of *lis pendens* to be filed. In Count III, Plaintiffs allege that Timothy, Richard, and Geodata are liable for tortious interference with Plaintiffs' contract, based on their allegedly improper motivation for causing the Colorado Complaint and notices of *lis pendens* to be filed. Plaintiffs, in Count IV, also allege liability for the civil conspiracy of Timothy, Richard, and Geodata to commit the acts set forth in Counts I, II, and III. Lastly, Plaintiffs request this Court to issue a declaratory judgment allowing MSD to rescind the royalty interests it assigned to Timothy, Richard, and Knappe.

The Defendants claim that the instant suit should be dismissed for several reasons. Richard, Knappe, and Geodata jointly move for the dismissal of the suit because this Court lacks personal jurisdiction to rule upon Plaintiffs' claims against Richard, Knappe, and Geodata.

Timothy claims that, while this Court may have jurisdiction to rule on Plaintiffs' claims against him, it should abstain from ruling because of the parallel rulings and jurisdiction of the Colorado court. All Defendants also move to dismiss Plaintiffs' claims for failure to state a claim on which relief may be granted. While Defendants challenge that Plaintiffs have failed to properly state all claims against Richard, Knappe, and Geodata, Timothy concedes that Plaintiffs' request for a declaratory judgment against him is properly set forth.

## STANDARD

### I.     Dismissal for Failure to State a Claim

"When considering a motion to dismiss pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure, the district court must accept all of the allegations in the complaint as true, and construe the complaint liberally in favor of the plaintiff." *Lawrence v. Chancery Court of Tenn.*, 188 F.3d 687, 691 (6th Cir. 1999) (citing *Miller v. Currie*, 50 F.3d 373, 377 (6th Cir. 1995)). Denial of the motion is proper "unless it can be established beyond a doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." *Achterhof v. Selvaggio*, 886 F.2d 826, 831 (6th Cir.1989) (citing *Conley v. Gibson*, 355 U.S. 41, 45-46 (1957)). Nonetheless, unwarranted factual inferences or legal conclusions masquerading as fact will not prevent a motion to dismiss. *Blakely v. United States*, 276 F.3d 853, 863 (6th Cir. 2002). A "complaint must contain either direct or inferential allegations respecting all the material elements to sustain a recovery under some viable legal theory." *Andrews v. Ohio*, 104 F.3d 803, 806 (6th Cir. 1997) (citing *In re DeLorean Motor Co.*, 991 F.2d 1236, 1240 (6th Cir. 1993)).

## II.     Abstention

Federal courts may abstain from hearing duplicative litigation under exceptional circumstances. *Colorado River Water Conservation Dist. v. United States*, 424 U.S. 800, 47 L.Ed. 2d 483, 96 S.Ct. 1236 (1976). Factors relevant to whether abstention is proper include

(1) whether state court has assumed jurisdiction over an res or property;

(2) whether federal forum is less convenient to parties;

(3) avoidance of piecemeal litigation;

(4) order in which jurisdiction was obtained;

(5) whether state or federal law provides rule of decision;

(6) adequacy of state court action to protect federal plaintiff's rights;

(7) relative progress of state and federal proceedings; and

(8) presence of absence of concurrent jurisdiction.

*Karakas v. McKeown*, 783 F.Supp. 1028, 1149 (E.D. Mich. 1992).

The federal court determining whether to abstain is to consider the interests of wise judicial administration and federal-state comity. *Kawecki ex rel. Marlow v. County of Macomb*, 367 F.Supp.2d 1137, 1148 (E.D. Mich. 2005). Abstention is only proper in the presence of a parallel state court proceeding. *Baskin v. Bath Township*, 15 F.3d 569, 571-72 (6th Cir. 1994); *Crawley v. Hamilton County Comm'rs*, 744 F.2d 28, 31 (6th Cir. 1984). Actions are considered parallel if the parties are substantially similar and the claims arise from the same material facts. *Romine v. CompuServe Corp.*, 160 F.3d 337, 340 (6th Cir. 1998).

## III.    Dismissal for Lack of Personal Jurisdiction

In determining whether it may exercise personal jurisdiction over a defendant, a federal district court sitting in a diversity-of-citizenship case must conduct a two-step inquiry: "(1) whether the law of the state in which the district court sits authorizes jurisdiction, and (2) whether the exercise of jurisdiction comports with the Due Process Clause." *Brunner v. Hampson*, 441 F.3d 457, 463 (6th Cir. 2006). The Kentucky Long Arm statute allows personal jurisdiction over nonresident defendants in nine enumerated situations, including when a defendant "transact[s] any business in this Commonwealth," "caus[es] tortious injury by an act or omission in this Commonwealth," or "caus[es] tortious injury in this Commonwealth by an act or omission outside this Commonwealth if he regularly does or solicits business, or engages in any other persistent course of conduct, or derives substantial revenue fro goods used or consumed or services rendered in this Commonwealth...." Ky. Rev. Stat. § 454.210 (a) (1), (3), and (4). Courts have held that the Kentucky Long Arm statute authorizes federal district courts in sitting in Kentucky to exercise personal jurisdiction over defendants to the full extent allowed under the Due Process Clause. *Aristech Chem. Int'l v. Acrylic Fabricators*, 138 F.3d 624, 627 (6th Cir. 1998) (citing *Wright v. Sullivan Payne Co.*, 839 S.W.2d 250, 253 (Ky. 1992)); *Lexmark Int'l, Inc. v. Laserland, Inc.*, 304 F.Supp.2d 913, 915 (6th Cir. 2004) (citing *Wilson v. Case*, 85 S.W.3d 589, 592 (Ky. 2002)). "Therefore, the two-step inquiry employed by the Federal Circuit collapses into a single inquiry of whether jurisdiction violates federal due process." *Lexmark*, 304 F.Supp.2d at 915 (citing *Akro Corp. v. Luker*, 45 F.3d 1541, 1544 (Fed. Cir. 1995)).

The Sixth Circuit applies a three-part test to determine whether the requirements of due process are met for the purposes of specific personal jurisdiction.

First, the defendant must purposefully avail himself of the privilege of acting in the

> forum state or causing a consquence in the forum state. Second, the cause of action must arise from the defendant's activities there. Finally, the acts of the defendant or consequences caused by the defendant must have a substantial enough connection with the forum state to make the exercise of jurisdiction over the defendant reasonable.
>
> *Id. See also Brunner*, 441 F.3d at 463.

The requirement that a defendant must "purposefully avail" himself of Kentucky laws "ensures that a defendant will not be haled into a jurisdiction solely as a result of 'random,' 'fortuitous,' or 'attenuated' contacts." *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 475, 85 L.Ed. 2d 528, 105 S. Ct. 2174 (1985). The defendant must enjoy some privileges of acting within the state and reasonably expect being haled into court in that state. *World-Wide Volkswagen Corp. v. Woodson*, 444 U.S. 286, 297, 100 S. Ct. 559, 62 L.Ed.2d 490 (1980); *Hanson v. Denckla*, 357 U.S. 235, 253, 78 S.Ct. 1228 (1958).

Due process may also be satisfied through general personal jurisdiction when the cause of action did not arise directly from the defendant's activities in the forum state. "[D]ue process is not offended by a State's subjecting [a defendant] to its in personam jurisdiction when there are sufficient contacts between the State and the [defendant]...." *Helicopteros Nacionales de Colombia, S.A., v. Hall*, 466 U.S. 408, 414-16, 104 S. Ct. 1868 (1984) (internal citations omitted). Sufficient contacts for general personal jurisdiction must be "continuous and systematic general business contacts." *Id.* at 416 (citing *Perkins v. Benquet Consol. Mining Co.*, 342 U.S. 437, 438, 72 S.Ct. 413 (1952)).

## ANALYSIS

**I.     Motion to Dismiss Claims against Richard, Knappe, and Geodata for Failure of Personal Jurisdiction**

Defendants Richard, Knappe, and Geodata moved to dismiss the Plaintiffs' claims arguing that this Court had no personal jurisdiction over them. Richard, Knappe, and Geodata first noted that Plaintiffs did not specify the section of the Kentucky Long Arm statute which would give them jurisdiction. The Court holds that no separate inquiry of personal jurisdiction under the Kentucky Long Arm statute is required. *See Lexmark*, 304 F.Supp.2d at 915. The Court need only analyze its personal jurisdiction over Richard, Knappe, and Geodata under the requirements of the Due Process Clause.

**A. General Personal Jurisdiction**

Plaintiffs claim that the Court has general personal jurisdiction over Richard, Knappe, and Geodata because of their business in oil leases in Kentucky. Plaintiffs claim that Geodata does sufficient business in Kentucky oil leases to satisfy the requirement of continuous and systematic business requirements for general personal jurisdiction. In support of this argument, Plaintiffs cite to contractual mineral interests acquired by Geodata in Kentucky around 2006. However, Geodata is a Colorado limited liability company with its principal office in Colorado. All Geodata directors, agents, and employees live in Colorado. Geodata does not place any goods into the stream of commerce in Kentucky, and its connection to Kentucky is limited to several mineral royalty contracts unrelated to the claims in this case. These contracts, while some contact with the state of Kentucky, are not sufficiently extensive to satisfy the general personal jurisdiction standard of continuous and systematic contact.

Plaintiffs also alleged that, if the Court exercised general personal jurisdiction over Geodata, it could also exercise personal jurisdiction over Richard as a person controlling Geodata. *Audiovox Corp. v. Moody*, 737 S.W.2d 468, 470 (Ky. 1987). Because Richard is not

9

the sole controller of Geodata, Plaintiffs have not alleged facts in support of piercing the corporate veil, and primarily because Geodata is not subject to general personal jurisdiction before this Court, the Court does not have general personal jurisdiction over Richard.

**B. Specific Personal Jurisdiction**

Richard, Knappe, and Geodata argue that the Court may not exercise specific personal jurisdiction over them because this case is merely based on *lis pendens* filed by Timothy and relating to a Colorado suit to which they were not parties. Plaintiffs allege that the suit is not merely based on the *lis pendens*, but on the Defendants' participation and assistance in Timothy's Colorado lawsuit, their alleged conspiracy with Timothy to damage Plaintiffs' interests, and from Defendants' interests in Kentucky real property.

Plaintiffs allege that Richard and Geodata supported and conspired with Timothy in the Colorado suit. Plaintiffs allege that Richard and Geodata are directly liable for their assistance to Timothy in preparation for his case and their threats to sue in similar suits in Kentucky and Colorado. Plaintiffs also argue that Richard and Geodata are liable to the extent that Timothy is liable because they conspired with him to file the Colorado lawsuit and Kentucky *lis pendens*. *See Gemini Enters., Inc. v. WFMY Television Corp.*, 470 F. Supp. 559, 564 (M.D.N.C. 1979). In particular, Plaintiffs note documents by Richard mentioning that the Colorado suit affected his joint interests, presumably with Timothy and Geodata.

Plaintiffs also contend that specific personal jurisdiction may be conferred by Geodata's interest in real property in Kentucky and Richard's interest as a member of Geodata. The parties agree that Geodata has an overriding royalty interest in some oil leases in Kentucky. An overriding royalty interest constitutes real property under Kentucky law. *Kentucky Bank & Trust*

*Co. v. Ashland Oil & Transp. Co.*, 310 S.W.2d 287, 288 (Ky. 1958). Under the Kentucky Long Arm statute, it is clear that a defendant's real property in the forum state may give rise to specific personal jurisdiction. However, because Plaintiffs do not allege that the Colorado lawsuit or *lis pendens* underlying the instant matter arise from Geodata's real property holdings in Kentucky, this is not sufficient to establish the Court's personal jurisdiction over Geodata or Richard.

Richard and Geodata note that any advice given or documents written by Richard were after the Colorado suit and Kentucky *lis pendens* were filed. Furthermore, Richard and Geodata argue that no conspiracy or direct tortious acts on their part were alleged in the Complaint. The Court finds that conspiracy and cooperation by Richard and Geodata were alleged sufficiently in the Plaintiffs' complaint. Because the Court is required to take all allegations in the Complaint as true for purposes of the Motion to Dismiss for Failure of Personal Jurisdiction, the Court declines to dismiss the matter on this basis. It is possible that Plaintiffs will show the existence of collaboration between Richard and Timothy in filing the Colorado suit, and such activities were properly alleged in the Complaint.

II.     **Abstention on Claims against Timothy**

Timothy seeks for the Court to abstain in judgment of the claims against him because of the remaining declaratory judgment claims remaining in the Colorado litigation between himself and Stephen Smith in his individual capacity. This argument is premised on Timothy's assertion that Stephen Smith, Inc., a Plaintiff in this case, is a mere alter-ego to Smith the individual or is in privity with him. Because Timothy, and both the Stephen Smith person and corporation reside in or near Colorado, Timothy argues that the federal forum is inconvenient. He claims that,

though other issues are adjudicated concurrently in this Court, the claims between himself and Stephen Smith will be decided through piecemeal litigation without abstention. Timothy correctly notes that Colorado law applies to some claims and that Colorado first obtained jurisdiction over this matter. The Colorado court is fit to decide the case and has already disposed of several motions in the matter ahead of this Court.

Plaintiffs claim that no parallel action exists which would persuade this Court to abstain. Plaintiffs note that the parties differ in the Colorado action from the named parties in this action.[1] Furthermore, Plaintiffs note that the interests differ in the Colorado action from the present action. The Colorado action is set to determine whether rescission of Timothy's interests is proper. The present action is set to determine whether the filing of the Colorado action and the related *lis pendens* are proper. Although the actions are related, they are not parallel as required for abstention. Therefore, the Court denies Timothy's motion for abstention.

### III.  Failure to State a Claim on Which Relief May Be Granted

### A.  Abuse of Process Claims

Richard, Geodata, and Knappe first assert that claims of abuse of process against them should be dismissed because the Colorado litigation and Kentucky *lis pendens* underlying this suit were filed by Timothy only. Because claims of civil conspiracy remain in this matter and, taking Plaintiff's allegations as true, may extend Timothy's liability to Richard and Geodata, the

---

[1] Timothy claims that *Romine* stands for the proposition that parties need not be identical. In *Romine*, however, the parallel suits involved class actions with different named parties but congruent classes and claims. Essentially, in *Romine*, the classes serving as parties were identical, though not named identically.

Court will not dismiss the abuse of process claims for this reason.

Defendants next contend that they are immune from any liability relating to the Colorado litigation because Timothy had a First Amendment right to petition the court for redress in the matter. The parties agree that Colorado law should apply to this issue, because the alleged abuse of process took place in relation to the Colorado litigation.[2] The First Amendment provides citizens with "the right to petition the government for redress of grievances [which] necessarily includes the right of access to the courts." *Protect Our Mountain Environment, Inc. v. District Court in and for Jefferson County*, 677 P.2d 1361, 1365 (Colo. 1984) (hereinafter "*POME*"). "The First Amendment right to petition has been applied to immunize various forms of administrative and judicial petitioning activity from legal liability in subsequent litigation." *Id.* Defendants contend that Timothy is immune from liability for filing the Colorado lawsuit because, although it was unsuccessful, he is constitutionally granted the right to pursue his interests in court.

Plaintiffs claim that this matter fits within the "sham" exception to the immunity granted in *POME*. To show that Defendants are not immune to abuse of process claims under the "sham" exception, Plaintiffs must show that the Colorado suit was "baseless litigation" and "that the petitioning activity was conducted primarily for harassment or other improper purpose." *Id.* at 1367. In other words, Plaintiffs must show that the Defendants are not immune for their promotion of the Colorado lawsuit because

(1) the defendant's administrative or judicial claims were devoid of reasonable

---

[2]Kentucky law, if it were found to apply to this matter, requires that the litigation was for the primary purpose of adjudicating a claim and with probable cause. *Prewitt v. Sexton*, 777 S.W.2d 891, 894 (Ky. 1989).

13

factual support, or, if so supportable, lacked any cognizable basis in law for their assertion; and (2) the primary purpose of the defendant's petitioning activity was to harass the plaintiff or to effectuate some other improper objective; and (3) the defendant's petitioning activity had the capacity to adversely affect a legal interest of the plaintiff.
*Id.* at 1369.[3]

As determined in the Colorado lawsuit in response to Plaintiffs Smith and MSD's counterclaims in that suit, the primary purpose of Timothy's Colorado claims were not to harass or pursue an improper objective. The Colorado suit established that Timothy's claims were not a "sham" under the *POME* standards and that he was immune from liability for making them.[4] Because Plaintiffs were both involved in or parties to the Colorado suit, they are bound by the Colorado court's rulings under the principles of collateral estoppel and res judicata. Therefore, the Court holds that Plaintiffs' abuse of process claims regarding the filing of the Colorado lawsuit are dismissed.

Plaintiffs also make abuse of process claims regarding the filing of the *lis pendens* in Kentucky. The Plaintiffs remain bound by the Colorado court's ruling that "[w]hile there was no cognizable legal basis for [Timothy] to file the lis pendens, there is likewise no reasonable basis to conclude that [Timothy] filed the lis pendens to harass or accomplish some other inappropriate objective." However, even if the Court applies Kentucky law to the *lis pendens* which engaged Kentucky process, Kentucky law is clear that a claim for abuse of process cannot stand. "The lis pendens is merely a notice required by a statute to protect the interests of any subsequent

---

[3] Plaintiffs urge the application of the *Salstrom* standard to this matter. *Salstrom v. Starke*, 670 P.2d 809, 811 (Colo. App. 1983). Because *Salstrom* was decided before *POME*, the Court adopts the most recent declaration of Colorado law as applicable to this matter.

[4] The Colorado suit was eventually dismissed for failure of subject matter jurisdiction, not because Timothy's claims were determined to be without merit.

purchasers. It is filed without intervention of the judicial authority and brings neither the property nor any parties before the court. Since there is no process, there can be no abuse of process." *Bonnie Braes Farms, Inc. v. Robinson*, 598 S.W.2d 765, 766 (Ky. Ct. App. 1980). Therefore, the claims of abuse of process arising out of the *lis pendens* filed in Kentucky are also properly dismissed.

**B.     Slander of Title Claims against Timothy, Richard, and Geodata**

Because Plaintiff's titles which they claim were slandered are in Kentucky, the Court applies Kentucky law to this claim. Defendants note that the Plaintiffs "must plead and prove that the defendant[s] knowingly and maliciously communicated, orally or in writing, a false statement which has the effect of disparaging the plaintiff's title to property; he must also plead and prove that he has incurred special damage as a result." *Id.* (citing *Ideal Savings Loan & Bldg. Ass'n v. Blumberg*, 175 S.W.2d 1015 (Ky. 1943) and *Hardin Oil Co. v. Spencer*, 266 S.W. 654 (Ky. 1924)). "[I]f special damage has not been incurred, the action is not maintainable." *Id.* Special damages must be alleged with specificity. Fed. R. Civ. Pro. 9 (g). In this matter, however, Plaintiff's did allege specifically the types of damages suffered due to the alleged slander, namely "(a) the diminution of the fair market value of their various leasehold and oil and gas rights and interests in western Kentucky, (b) the incurrence of attorney's fees and court costs, and (c) the loss of profits and lost business opportunities in the form of lease acquisitions and lease sales..."

Defendants contend that, because the *lis pendens* were asserted in good faith, they are not actionable. *Hardin*, 266 S.W. at 655. Whether the *lis pendens* were filed in good faith or bad remains an issue of fact and does not warrant dismissal of this claim at this time. For these

reasons, the Court declines to dismiss Plaintiff's slander of title claims.

C.  **Tortious Interference with Contracts against Timothy, Richard, and Geodata**

Kentucky law again applies to this claim, because Plaintiffs allege that Defendants' actions interfered with Kentucky contracts. Defendants claim that allegations of tortious interference with contractual relations must fail because mere allegation of interference is insufficient. "[A] party may not recover... in absence of proof that the opposing party 'improperly' interfered with his prospective contractual relation." *E. Kentucky Resources v. Arnett*, 892 S.W.2d 617, 619 (Ky. Ct. App. 1995). However, the Complaint alleges that the *lis pendens* notice was filed "wrongfully and maliciously [to] create[] a cloud upon Plaintiffs' title to the various oil and gas rights and interests owned and possessed by Plaintiffs in western Kentucky." This presents and issue of fact as to whether Timothy's interference was "improper" and the Court cannot dismiss the claim at this time.

D.  **Civil Conspiracy of Timothy, Richard, and Geodata**

Defendants challenge the civil conspiracy claims on the basis of insufficient pleading. Defendants allege that special damages must be plead with specificity to support a conspiracy claim, as do the elements of agreement and concerted action. The Court finds no support for Defendants claim that specific pleading of special damages is required. However, Plaintiffs "must allege the existence of (1) two or more persons, (2) an object to be accomplished, (3) an agreement on the object or course of action, and (4) one or more overt acts and (5) damages as a proximate result thereof." *Houston v. Mile High Adventist Academy*, 846 F.Supp. 1449, 1457-58 (D. Colo. 1994) (quoting *Schneider v. Midtown Motor Co.*, 854 P.2d 1322, 1326 (Colo. App. 1992)). In their Complaint, Plaintiffs allege certain overt acts, an agreement between Richard

and Timothy on behalf of Geodata to pursue actions against Plaintiffs, and the goal to be accomplished. While these allegations may not be detailed, they do provide Defendants with adequate notice of the claims against them. Fed. R. Civ. Pro. 8(e)(1). Therefore, the Court does not dismiss this claim at this time.

**E.   Declaratory Judgment Regarding All Defendants**

While Timothy concedes that the declaratory judgment proceedings should continue against him, the other Defendants challenge the propriety of declaratory judgment at this time. In deciding whether to use its discretion to issue a declaratory judgment, the Court considers five factors:

> (1) whether the judgment would settle the controversy;
> (2) whether the declaratory judgment action would serve a useful purpose in clarifying the legal relations at issue;
> (3) whether the declaratory remedy is being used merely for the purpose of "procedural fencing" or "to provide an arena for a race for res judicata;"
> (4) whether the use of a declaratory action would increase the friction between our federal and state courts and improperly encroach on state jurisdiction; and
> (5) whether there is an alternative remedy that is better or more effective.
> *Scottsdale Ins. Co. v. Roumph*, 211 F.3d 964, 968 (6th Cir. 2000).

The Court finds that a declaratory judgment on the rescission of Timothy's assignment rights would at least determine the propriety of the *lis pendens* issued and might resolve some claims in this matter without further litigation. While it would not completely settle the claims in this matter and would somewhat encroach on decisions otherwise made by a state court, the Court finds that the matters underlying the request for declaratory judgment are so intertwined with the claims in this case that a declaratory judgment may be proper. Therefore, the Court does not dismiss the petition for declaratory judgment at this time.

## CONLCUSION

For the above reasons, the Court now GRANTS IN PART AND DENIES IN PART both Timothy's Motion to Dismiss and Richard, Knappe, and Geodata's joint Motion to Dismiss. The Motions to Dismiss are denied, except to the extent that Plaintiffs' claims for Abuse of Process are DISMISSED. An appropriate Order shall follow.